# United States Bankruptcy Court
# Eastern District Of Washington

| | | |
|---|---|---|
| In Re: | ) | |
| HW PARTNERS, LLC | ) | Main Case Number: 11-03366 |
| | ) | |
| Debtor. | ) | |
| LESTER AND BETSYDIANNE HENDRICKSON | ) | Adversary Number: 11-80317 |
| | ) | |
| Plaintiff(s), | ) | |
| vs. | ) | |
| HW PARTNERS, LLC, et al | ) | |
| | ) | **MEMORANDUM** |
| Defendants. | ) | |

This is a dispute over the proceeds of Estate #1 of Eritage Estates. This parcel along with other real estate of the debtor, HWP, was sold pursuant to order of this Court. The dispute is between two creditors of HWP, Hendricksons and MKA. This Court has previously decided on summary judgment the priority dispute between these creditors over the proceeds of the sale of HWP's other property. This matter was not decided on summary judgment because its resolution depended on disputed issues of fact. The court's "Findings of Uncontested Facts Supporting

HW PARTNERS, LLC
OPINION

1

Summary Judgment Decision," (Doc. 482), "Memorandum" (Doc. 483), and the matters contained in the parties agreed pretrial order (Doc. 515 pp. 2-11) are hereby incorporated into and made a part of this opinion.

The dispute to be resolved is whether MKA or Hendricksons are entitled to the sale proceeds of Estate #1, approximately $243,750. (Doc. 515 p. 11 ¶ 41). MKA claims a security in these proceeds based on its recorded assignment of mortgage on Estate #1, and a California filed financing statement. Hendricksons, who do not hold a security interest in Estate #1, claim as an unsecured creditor of HWP. Hendricksons argue that MKA can not claim the proceeds because the note and mortgage securing it have been satisfied.

I.     <u>A Narrative of the Eritage Project and Procedural Facts</u>

The promoters of the Eritage Project needed money to fund the acquisition and development of the Project. They borrowed the money from Westmoore, on the understanding that the loan would be secured by the property acquired. Westmoore in turn borrowed the money from MKA. The Westmoore debt to MKA was secured in part by HWP's note to Westmoore dated July 31, 2007 in the sum of $1,600,000. (Hendricksons Ex. A).

HWP was aware of MKA's involvement in funding Westmoore's loans to the Eritage Project. This is evidenced by the August-September 2007 emails between Jason Huntley of HWP, Jason Sugarman and Ryan Gahagan of MKA, and Matt Jennings of Westmoore. (MKA Ex.15, 16,

HW PARTNERS, LLC
OPINION

17 & 18). These communications culminated in the funding of the Eritage Project. MKA loaned money to Westmoore, funding HWP's July 31, 2007 note to Westmoore. This money financed HWP's purchase of Estate #1.

When HWP acquired Estate No. 1, along with the other property needed for the Project, it mortgaged Estate No. 1 to Westmoore to secure the July 31, 2007 note. (Hendricksons Ex. B). Westmoore assigned this mortgage to MKA by "Assignment of Mortgage" dated March 27, 2008, and recorded it with the Walla Walla County Auditor on June 5, 2008 (Hendricksons Ex. H). The assignment was given as security for payment of Westmoore's debt to MKA. MKA looked to Westmoore for payment whether Westmoore was being paid by HWP or not. (Waggoner Dep. p. 102).

MKA's counsel Dan White confirmed in his testimony that MKA was looking to Westmoore for payment, and if there was a default, MKA would pursue Westmoore. Mr. White also testified that it was MKA's policy when collecting on a note, that it would: 1) obtain possession of the original note; 2) advise the payor of the note that the note had been assigned to MKA; and 3) make the appropriate filings, both UCC and on the real estate records. In this case however, MKA did not obtain possession of the original note, nor did it formally advise HWP of the assignment of the HWP/Westmoore note to MKA. It did record the Assignment of Mortgage in Walla Walla County and did file in California a UCC-1 identifying the debtor as Westmoore. The California filing was

HW PARTNERS, LLC
OPINION

3

after MKA had learned of Hendricksons's competing interest.

In September of 2008, Westmoore, HWP, and HFI rewrote and consolidated the various Eritage Project notes and mortgages. In this process, Westmoore's Matthew Jennings satisfied and released the Eritage notes and mortgages which were assigned to MKA securing Westmoore's debt. The rewriting of the Eritage notes and mortgages was done without the involvement of MKA. Jennings could not cite any authorization from MKA for these actions. (Jennings Dep. pp. 121-122). MKA ostensively lost its security interest in the July 31, 2007 HWP note and the mortgage on Estate #1 securing it.

The consolidation process produced the September 30, 2008 HWP note to Westmoore in the sum of $3,226,249.40 (Hendricksons Ex. N). This note although secured by multiple mortgages on HWP's real estate, was not secured by a mortgage on Estate #1. Westmoore, in need of funds, borrowed $1,000,000 from Hendricksons, secured by the consolidated note and assignment of the mortgages securing it. (Hendricksons Ex. U,V). In the course of documenting this loan, Hendricksons obtained a title report. This title report failed to reveal MKA's recorded assignments of mortgage on the Eritage real estate. Westmoore's $1,000,000 note to Hendricksons was due December 31, 2008. (Hendricksons Ex. T). When Westmoore defaulted on payment of this note, Hendrickson took possession of the consolidation note and commenced negotiations with HWP concerning payment. Hendricksons and HWP reached an agreement to satisfy the $3,226,249.40

HW PARTNERS, LLC
OPINION

note for $2,000,000. In the course of financing that discounted payoff another title search was conducted which disclosed MKA's assignment of the mortgage on Estate #1.

This discovery generated a series of emails on May 5th and 6th, 2009, between Jason Huntley for HWP, and Sharon Sung and Jason Sugarman for MKA. (Hendricksons Ex. Y). Sung's email advised Huntley that Westmoore had assigned the HWP loan to MKA. Huntley replied that the loan had already been assigned to the Hendricksons. Sugarman told Huntley that this had never been disclosed to, or approved by, the senior creditor MKA. Huntley responded that he didn't understand why MKA was even involved. Sung pointed out that Huntley signed the initial loan documents. It was at this time MKA first became aware of the Hendricksons' competing interest.

On June 2, 2009, MKA filed with the California Secretary of State a UCC financing statement naming Westmoore as the debtor, MKA as the secured party, and referencing "Loan-Westmoore #21- $3,100,000" as its collateral. (MKA Ex. 19). MKA claims its priority over Hendricksons in part as a result of this filing.

In August of 2009, Hendricksons filed a complaint in Walla Walla Superior Court seeking relief including a judgment against Westmoore for $1,000,000, and a judgment against HWP for $3,226,249.40. (Doc. 5). Hendricksons also sought to foreclose on the collateral given as security for payment of these amounts. As part of that request, they sought a ruling that their interests were in first priority, superior to the interest of MKA. The interests to be foreclosed were these parties'

HW PARTNERS, LLC
OPINION
5

interest in Eritage Estates 2, 3, 4, 5, 6, 7 and 10. The Hendricksons' complaint did not seek foreclosure to Eritage Estate #1, presumably because they did not have a mortgage on that parcel.

MKA filed an answer to this complaint, which included various counterclaims and cross-claims. (Doc. 29). MKA sought judgment against Westmoore for $5,239,733.19, judgment against HWP for the amount owing on the July 31, 2007 note, and for foreclosure of MKA's assigned mortgages securing the HWP note, including the mortgage on Estate #1. MKA asserted its interest in these mortgages was superior to the claims of the Hendricksons.

HWP filed for chapter 11 relief in this court on July 8, 2011. On August 8, 2011, the Walla Walla County litigation was removed to this court where it continues in this adversary proceeding.

In the course of HWP's chapter 11 case, HWP's interest in the Eritage Project was sold free and clear of liens, with the parties respective claims attaching to the $2,054,325.54 proceeds of the sale.

Originally, Westmoore, HWP, MKA and Hendricksons all asserted interest in these proceeds. By agreement, Westmoore assigned its rights in the sale proceeds to Hendricksons (Doc. 515 p. 10 ¶36). HWP compromised its claim to the proceeds in exchange for a portion of the proceeds plus an agreement by Wylie for payment of its creditors (11-03366, Doc. 161; Doc. 175). As a result, the portion of the sale proceeds subject to the claims of MKA and Hendricksons were reduced to $1,950,000.00 (Doc. 515 p.10 ¶ 37). On summary judgment this court determined the rights to those

HW PARTNERS, LLC
OPINION

6

proceeds, with the exception of the proceeds attributable to Estate #1, approximately $243,750.00 (Doc. 515 p.11 ¶ 41; Doc. 482; Doc. 483).

MKA's claim to the proceeds of Estate #1 is based on its security interest in the July 31, 2007, note secured by its assignment of mortgage. Although Westmoore allegedly satisfied this note and released this mortgage in the process of consolidation, MKA argues that it was done without the knowledge, consent or authorization of MKA, and does not bind MKA. Therefore, MKA's assignment of mortgage on Estate #1 is enforceable by MKA in this adversary proceeding.

Hendricksons, who admittedly don't hold a mortgage on Estate #1, contend Westmoore satisfied MKA's note and the mortgage on Estate #1 in the process of consolidating the HWP and HFI notes and mortgages relating to the Eritage Project. (Hendricksons Ex. O). Therefore, Hendricksons claim as the only unsecured creditor of HWP, in their own right and as assignee of Westmoore.

The Court will analyze these competing positions.

II.     The Competing Claims to the Proceeds of Estate #1

A.      Hendricksons' Unsecured Claim in the Proceeds of Estate #1

Westmoore, HWP, and HFI consolidated the various notes related to the Eritage Project into one note made by HWP to Westmoore dated September 30, 2008 in the sum of $3,226,249.40. It specifically provided that this new note "consolidates and pays off all current outstanding loans" and

HW PARTNERS, LLC
OPINION

7

specifically referred the July 31, 2007 note. MKA had a security interest in this note which was secured in part by a mortgage on Estate #1, and had subsequently been assigned to MKA. No new funds were advanced on the execution of this consolidation note. As a result of this consolidation the mortgage on Estate #1 securing the July 31, 2007 note was allegedly satisfied. This consolidation process and satisfaction of the mortgage was done without the knowledge, participation, or express consent of MKA.

Hendricksons take the position that as a result of this consolidation process, the July 31, 2007 note was paid and the mortgage securing it on Estate #1 was satisfied and released.

Hendricksons base their claims to the proceeds of Estate #1 as unsecured creditors of HWP, and as assignees of the rights of Westmoore against HWP. Hendricksons take the position that MKA has no rights to the proceeds of Estate #1, whether as a secured creditor, or as an unsecured creditor of HWP. They contend that MKA's obligation has been satisfied and its mortgage released. HWP owes nothing to MKA. Hendricksons are the sole claimants entitled to those proceeds.

1.      Westmoore's Authority to Satisfy and Release

Hendricksons' position is based on the premise that MKA authorized Westmoore to solely deal with the HWP transactions. The evidence is clear that MKA loaned Westmoore $3,100,000 by its September 21, 2007 note. (MKA Ex. 26). By its terms, that note was secured by HWP's note to Westmoore dated July 31, 2007. HWP executed the mortgage on Estate #1 to Westmoore to secure

the July 31, 2007 note. Westmoore assigned this mortgage to MKA. MKA treated these transactions as a collateralized loan to Westmoore. It looked primarily to Westmoore for payment, but it retained a security interest in the July 31, 2007 note secured by Westmoore's recorded assignment of mortgage on Estate #1. Although it did not obtain possession of the July 31, 2007 note, nor did it formally advise HWP of its interest in that note, this does not suggest that it was relinquishing or waiving its mortgage interest.

Hendricksons argue that because MKA was looking primarily to Westmoore for payment, and did not fully perfect its security interest, Westmoore was authorized to act as it did with HWP's note and mortgage. There is no evidence that MKA expressly gave Westmoore such authority.

Hendricksons argue that such authority is implied from the facts. The evidence shows that there were few, if any payments made on the note. There is nothing significant in the course of dealings between the parties, that would indicate MKA gave express or implied authority to Westmoore to negate or cancel MKA's interest. At the time of the consolidation of the notes, Westmoore's note to MKA for $3,100,000 was due September 21, 2008. Matthew Jennings, the officer of Westmoore that handled the consolidation process and executed the satisfaction of note and mortgage on Estate #1, could not identify the authority upon which he acted. (Jennings Dep. Pp. 121-122). Almost immediately after the consolidation was completed, Westmoore borrowed $1,000,000 secured by the $3,226,249.40 consolidation note. That $1,000,000 loan was due in less

HW PARTNERS, LLC
OPINION

9

than three months. At the time of this loan, Westmoore was desperately short of money. The chance of default was high, with the potential loss of the $3,226,249.40 consolidation note as a consequence. If Westmoore was a faithful collecting agent, it would have substituted the consolidated note and its collateralizing mortgages as MKA's collateral. Instead, Westmoore took the new note and borrowed against it for its own purposes.

The court finds that MKA did not give Westmoore the authority, either express or implied to extinguish its interest in the July 31, 2007 note or to satisfy and release its assignment of mortgage securing the same in Estate #1. Westmoore's actions to unilaterally extinguish MKA's interest and satisfy the obligation secured thereby were wrongful and do not bind MKA. To the extent Westmoore represented that it was entitled to take such action, it was not. Hendricksons' argument that MKA was bound by the action of Westmoore is rejected.

2.  <u>HWP's Knowledge of MKA's Interest</u>

HWP has relinquished its own right to the proceeds of Estate #1, leaving Hendricksons and MKA to litigate who is entitled to HWP's share. Hendricksons claim HWP's share as an unsecured creditor of HWP, as they stand in the place of HWP.

This raises a question, could HWP in good faith assert that it paid and satisfied the July 31, 2007 note and released the mortgage on Estate #1 securing it, despite MKA's recorded mortgage assignment? HWP did not actually pay off the note. Rather, the note was rewritten and consolidated

HW PARTNERS, LLC
OPINION
10

with other Eritage obligations. Another question this raises is whether HWP knew of MKA's interest at the time of consolidation? Jason Huntley's role in these matters is critical to this analysis.

Jason Huntley was the principal acting partner for both HWP and HFI in the development of the Eritage Project. As such, he dealt directly with Westmoore, MKA and Hendricksons as the agent of HWP.

Mr. Huntley was related by marriage to Matthew Jennings, the managing partner of Westmoore. (Jennings Dep. p. 31). Westmoore has had a long term relationship with Huntley's advisory business, and had previously lent money for various deals (Jennings Dep. p. 31-32).

Likewise, Jason Huntley had prior dealings with MKA. It was Westmoore that originally introduced Huntley to MKA. (Huntley Dep. p. 88). On prior occasions, he or his consulting company had loaned money to MKA. This was cited as a reason that HWP could not borrow money directly from MKA for the Eritage Project because it created a conflict of interest. (Huntley Dep. p. 183).

Jason Huntley was the Hendricksons' personal financial advisor as well as a family friend. Huntley's relationship with Hendricksons was a long term one. Huntley was staying at the Hendricksons' when Westmoore defaulted on payment of its note to Hendricksons.

Jason Huntley was at the center at every stage of the dealings among the parties, and referred to himself as "the centrifuge." (Huntley Dep. p. 28). He signed as Manager/Member of HWP on the

HW PARTNERS, LLC
OPINION

11

July 31, 2007, note to Westmoore. (Hendricksons Ex. A). Westmoore needed money to fund that note and sought to borrow it from MKA. Jason Huntley knew that MKA intended to take a collateral interest in the Eritage real property to be purchased by HWP. At MKA's request, Huntley provided Sugarman with a deal summary which described the Eritage Project in detail, tying the $1,600,000 note to the 240 acres to be purchased and estimating the loan to value variance at 26.67% to 33.33%. (MKA Ex. 15, 16). Huntley was advised that MKA needed to "get title (validation of the 1st before us and right to deed to us...)" as well as an appraisal to support the loan to value variance. (MKA Ex. 17). Jason Huntley suggested to Jim Fredericks of Westmoore and Jason Sugarman of MKA, "Why not do both of these as hard money loans?" (MKA Ex. 17). Finally, just prior to the closing which was to fund the $1,600,000 July 31, 2007 note, Jason Sugarman of MKA emailed Huntley "We need the deed on the asset when you purchase it." (MKA Ex. 18).

This series of communication between Jason Huntley and representatives of MKA clearly demonstrate Jason Huntley was aware that MKA was to have a collateral interest in the real estate purchased by HWP. When HWP acquired its Eritage property, it granted a mortgage on the acquired property including Estate #1 to Westmoore. This was consistent with the parties' plan. The MKA money was funneled through Westmoore to avoid the appearance of a conflict of interest if MKA loaned the money directly to HWP. Westmoore's assignment of mortgages to MKA is consistent with this plan. There is nothing in the conduct of any of the parties to suggest anything to the

HW PARTNERS, LLC
OPINION
12

contrary until September of 2008.

Westmoore's note to MKA was due September 21, 2008. HWP's note was due to Westmoore on December 31, 2008. Neither had the money to pay when these notes became due. As both Huntley and Hendricksons testified, the financial markets were troubled, and money was hard to borrow.

In these circumstances, Westmoore, HWP, and HFI consolidated the various Eritage notes and adjusted the mortgages collateralizing the Eritage debt. Huntley actively participated in this consolidation process on behalf of HWP and HFI. Matthew Jennings acted for Westmoore. They consolidated the Eritage Project notes into one HWP note dated September 30, 2008 in the sum of $3,226,249.40. No debt was paid down in this process. HWP did receive a one-year extension of its obligation. (Hendricksons Ex. N).

Immediately, Westmoore sought to borrow against the consolidation note. It needed cash to take advantage of an opportunity to buy some brokerage offices. (Huntley Dep. p. 145). It asked Huntley to find such a lender. Huntley suggested the Hendricksons. Hendricksons agreed to loan $1,000,000 to Westmoore secured by HWP's $3,226,249.40 consolidation note and mortgages on the Eritage Project. This loan was due on December 31, 2008. (Hendricksons Ex. T). If paid per its terms, Hendricksons would earn $120,000 as interest and fees on this short term loan of sixty-nine days. Huntley suggested to Hendricksons that if Westmoore did default, Hendricksons would

HW PARTNERS, LLC
OPINION
13

automatically acquire the HWP's consolidation note in the sum of $3,226,249.40 along with the mortgages securing it.[1] As a result, Hendricksons would get an even better return upon default than if Westmoore paid the note on time. Huntley and HWP would be in a position to settle that note and would benefit by satisfying their obligations at a very substantial discount.

Jason Huntley had thus positioned himself to benefit on all sides of this transaction. He was compensated by Westmoore for providing a lender, the Hendricksons. (Huntley Dep. P. 28). If there was a default, he was in a position to negotiate a substantial discount of HWP's debt. MKA's interest in the Eritage property was an impediment to these plans.

Huntley had knowledge of MKA's interest. It was Huntley who provided the description of the Eritage Project to MKA with loan to value information. (MKA Ex. 15). It was Huntley who suggested that the deal be structured as a "hard money loan," i.e. one secured by the value of the real estate purchased.[2] It was Jason Huntley who was advised by MKA's Jason Sugarman "We need the deed on the asset when you purchase it." (MKA Ex. 18). Although he had ample reason to bring up

---

[1] The course of this litigation has shown this to be a false assumption.

[2] Wikipedia describes a hard money lender as follows: Hard money lenders are lending companies offering a specialized type of real-estate backed loan. They lend short-term capital that provide funding based on the value of the real estate acting as collateral. Hard money lenders tend to focus on the value of the collateral property rather than the borrower's ability to repay based on their own personal income or assets, as is common with other lenders. Hard money lenders typically charge much higher interest rates than banks because they fund deals that do not conform to bank standards such as verification of borrower's income, assets, or credit score. Hard Money Lender, Wikipedia.org, http://en.wikipedia.org/wiki/Hard_money_lender (last accessed March 19, 2014).

HW PARTNERS, LLC
OPINION
14

the issue of MKA's interest, he supposedly failed to do so. Matthew Jennings could not explain his or Westmoore's authority to compromise MKA's position. (Jennings Dep. p. 121). Jason Huntley never questioned this authority, despite his knowledge of MKA's involvement. To do so would jeopardize his plans.

Westmoore did default on its payment due December 31, 2008. Hendricksons took possession of the consolidation note and proceeded to negotiate with HWP for satisfaction of the $3,226,249.40 note for payment of $2,000,000. In the process of attempting to borrow the needed $2,000,000, a title report disclosed the MKA assignment of mortgages. Huntley claims May 2009 was the first time he learned of MKA's interest. (Huntley Dep. p. 187). Huntley's protestations that this was his first knowledge of MKA's interest in HWP's real estate are not persuasive. He was aware of MKA's involvement from the loan's inception in September of 2007. Jason Huntley's knowledge was HWP's knowledge.

HWP, given its knowledge of MKA's interest, cannot in good faith claim that it paid and satisfied the July 31, 2007 note. It did not pay off the note, it rewrote it. Huntley, HWP's managing partner, then arranged the pledging of the rewritten note to the Hendricksons, innocent third parties. This action impaired MKA's rights to the rewritten note as proceeds. These actions were taken in part to benefit HWP by enabling it to substantially reduce its debt. Although this scheme ultimately failed, HWP could not in good faith claim that it paid and discharged the July 31, 2007 note secured by

HW PARTNERS, LLC
OPINION

15

MKA's mortgage assignment on Estate #1.[3] Hendricksons, although innocent themselves, stand in the place of HWP and are bound by HWP's knowledge of MKA's interest.

B.  MKA's Secured Claim in Estate #1

MKA loaned money to Westmoore to enable it to finance HWP's acquisition of property for the Eritage Project. MKA's loan to Westmoore was evidenced by a $3,100,000 promissory note dated September 21, 2007. That note provided that it was secured in part by HWP's note to Westmoore dated July 31, 2007 in the sum of $1,600,000. When HWP acquired the property, it granted mortgages to Westmoore securing the July 31, 2007 note. Westmoore then assigned these mortgages to MKA. The mortgages and assignments were duly recorded in Walla Walla County.

Although MKA's security interest has not been fully perfected pursuant to all the applicable law, it does hold a mortgage interest in Estate #1 as a result of its recording in the real estate records of Walla Walla county and claims a security interest with its filing of a UCC financing statement in California. (Doc. 483).

1.  Assignment of Mortgage

When HWP purchased Estate #1, it executed a mortgage dated December 10, 2007, payable to Westmoore in the sum of $320,000.00, according to the terms of HWP's note to Westmoore dated July

---

[3] This is distinguishable from Rogers v. Seattle First National Bank, 40 Wash. App. 127, 697 P.2d 1009 (1985), where the obligee in good faith actually paid the collecting agent pursuant to the authority given by the lendor. Huntley and HWP, knowingly and for their own benefit, wrongfully acted in concert with Westmoore to impair MKA's rights. HWP cannot in good faith claim these actions paid and satisfied MKA's debt.

HW PARTNERS, LLC
OPINION

16

31, 2007. (Hendricksons Ex. B). Westmoore in turn assigned this mortgage to MKA by an "Assignment of Mortgage" dated March 27, 2008. (Hendricksons Ex. H). This assignment was recorded June 5, 2008, in the real estate records of Walla Walla County.

RCW 61.16.010 provides:

> Any person to whom any real estate mortgage is given, or the assignee of any such mortgage, may, by an instrument in writing, signed and acknowledged in the manner provided by law entitling mortgages to be recorded, assign the same to the person therein named as assignee, and any person to whom any such mortgage has been so assigned, may, after the assignment has been recorded in the office of the auditor of the county wherein such mortgage is of record, acknowledge satisfaction of the mortgage, and discharge the same of record.

Mortgage assignments are "conveyances" under the Washington recording act and thus must be recorded if the assignee is to be protected against third persons. RCW 65.08.060(3); RCW 65.08.070.; 18 Wash.Prac., Real Estate § 18.19 (2d ed.)

> An assignment must be by a written instrument, signed and acknowledged by the assignor, and recorded as soon as possible. An assignment is a simple, short instrument, but it should contain the following elements: (1) a statement that the holder of the mortgage "assigns" it to the assignee; (2) a recitation that the assignment is "for value received"; (3) identification of the mortgage by date of execution, names of the original mortgagor and mortgagee, and its recording data; (4) the assignor's signature; and (5) acknowledgment of the assignor's signature.

18 Wash.Prac., Real Estate § 18.18 (2d ed).

> "An assignee of a mortgage is a purchaser, and is entitled to the protection of the recording acts as much as a purchaser of the equity of redemption."

*Price v. N. Bond & Morg. Co.*, 161 Wash. 690, 698, 297 P. 786, 789 (Wash. 1931) (internal citations omitted).

MKA's "Assignment of Mortgage" on Estate #1 meets the above referenced statutory provisions, and is entitled to the protections of Washington's recording statute.

Although Westmoore, acting through its CEO Matthew Jennings, executed a "Satisfaction of Mortgage" of this mortgage on Estate #1, dated October 16, 2008, as previously discussed in this

HW PARTNERS, LLC
OPINION

17

memorandum, that was done without the authority from MKA.

As of the time of sale of Estate #1, pursuant to the order of this Court, MKA was the rightful record owner of the mortgage on Estate #1.

Hendricksons argument that the obligation secured by this mortgage was paid and discharged by HWP has been rejected by this Court. MKA is entitled to enforce the first priority of its mortgage on Estate #1, in recovering the obligation due under the July 31, 2007 note.

2. Claimed Security Interest

MKA claims a security interest against Westmoore, perfected by the filing of a financing statement in California on June 2, 2009. This UCC-1 refers to "Loan-Westmoore Huntley #21-$3,100,000..." This reference is not clear. There is a note from Westmoore to MKA dated September 21, 2007 in the sum of $3,100,000 (MKA Ex. 26). That note indicates that it is secured in part by HWP's note to Westmoore dated July 31, 2007 in the sum of $1,600,000. It also identifies five other specific large items of collateral pledged as security not related to Huntley or the Eritage Project. The evidence before the Court indicates there have been multiple dealings between MKA, Westmoore, and Huntley entities over the years. The burden is an MKA to prove the specific nature and extent of its claimed security interest.[4] It has failed to do so.

III. Conclusion

MKA has a mortgage interest in the proceeds of Estate #1. MKA's assignment of mortgage

---

[4] In the court's previous ruling it gave MKA the benefit of very broad interpretation of its financing statement for the limited purpose of enabling the Court to deal with the parties' motions for summary judgment without resolving this potentially disputed question of fact. Whether the contents of the filing are sufficient to perfect MKA's claim is arguable. It would be MKA's burden of proof to assert this in its pleadings. (Doc. 483 p. 11).

HW PARTNERS, LLC
OPINION

was duly recorded and is entitled to priority pursuant to Washington's recording statute.

Hendricksons failed to prove by a preponderance of the evidence that MKA had given authority to Westmoore to satisfy MKA's recorded assignment of mortgage.

MKA proved by a preponderance of the evidence, that HWP in light of its knowing and wrongful actions could not in good faith assert that it had paid and discharged its obligation on the July 31, 2007 note, secured in part by Estate #1. Hendricksons, who claim through HWP, are bound by that decision. They can not claim HWP paid and satisfied the debt because HWP could not.

MKA is entitled to the proceeds of Estate #1.

Pursuant to the terms of FRBP 7052 and FRCP 52, this memorandum shall constitute the Court's findings of fact and conclusions of law.

Counsel for MKA are directed to prepare a judgment consistent with this memorandum and note it for presentation. When that judgment is entered in this matter, it together with the "Order on Cross-Motions for Pretrial Summary Judgment" (Doc 493) shall together constitute final judgments pursuant to FRBP 7054 and FRCP 54.

Done this 24 day of March, 2014

_____
JOHN A. ROSSMEISSL
BANKRUPTCY JUDGE

HW PARTNERS, LLC
OPINION

19